Submitted on remand from the Oregon Supreme Court January 9,
reversed and remanded for new trial July 5, 2006

## STATE OF OREGON,
*Respondent,*

*v.*

## PRESTON ALAN COCHRAN,
*Appellant.*

C020380CR; A120834

138 P3d 864

Michael McElligott, Judge.

Peter A. Ozanne, Executive Director, Peter Gartlan, Chief Defender, and Ernest G. Lannet, Deputy Public Defender, Office of Public Defense Services, for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Christina M. Hutchins, Assistant Attorney General, for respondent.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

This case is before us on remand from the Supreme Court. *State v. Cochran*, 339 Or 609, 127 P3d 650 (2005). Defendant appeals from a judgment convicting him of possession of a controlled substance, ORS 475.992(4)(b). Defendant assigns error to the trial court's denial of his motion to suppress. We initially affirmed defendant's convictions, but now reconsider defendant's appeal in light of *State v. Hall*, 339 Or 7, 115 P3d 908 (2005), and reverse and remand.

■ We begin with the facts. In reviewing a denial of a motion to suppress, we are bound by the trial court's findings of historical facts as long as there is constitutionally sufficient evidence in the record to support those findings. *State v. Mastin*, 203 Or App 366, 368, 124 P3d 1275 (2005) (citations omitted). Police officers were dispatched to a residence in response to a possible gas leak. The homeowner, Quick, was gathering his mail at a community mailbox across the street from the residence when the officers arrived. During the officers' conversation with Quick, defendant and a companion were spotted leaving Quick's residence. Officer Hevern and another officer crossed the street and asked, "What's going on?" After a brief exchange, Officer Hevern asked defendant and his companion if they could cross the street and talk with the other officers, and defendant agreed. At that point, neither Officer Hevern nor any of the other officers had any reason to suspect defendant of any crime.

When defendant joined the other officers across the street, Officer Hevern asked defendant for his identification. After obtaining defendant's identification, Officer Hevern checked to see if defendant had any outstanding warrants. Officer Hevern then asked defendant if he had any weapons, drugs, or anything illegal, to which defendant replied in the negative. Officer Hevern then asked defendant for consent to search his person. Defendant consented.

Before conducting the search, Officer Hevern asked defendant if he could place defendant in handcuffs during the search for officer safety reasons. Officer Hevern told defendant he was not under arrest, but that it would make the

search easier. Defendant consented to being placed in hand-cuffs. The ensuing search resulted in the discovery of a baggie of methamphetamine in defendant's wallet. Before searching defendant's wallet, Hevern specifically asked for, and obtained, defendant's consent to open it.

Before trial, defendant filed a motion to suppress the methamphetamine, arguing that the stop of defendant was unlawful and that the ensuing discovery of the methamphet-amine was an exploitation of that stop. Defendant relied heavily on our decision in *State v. Hall*, 183 Or App 48, 50 P3d 1258 (2002), *aff'd*, 339 Or 7, 115 P3d 908 (2005), before the Supreme Court affirmed. The trial court denied defen-dant's motion, stating:

> "I'm convinced that [Officer Hevern] was telling the truth and these things were consented to.
>
> "So on the basis of consent to each step along the lines, I find that there is no stop and no warrant requirement and no violation of the Constitution or any * * * statutes which will require the suppression of evidence * * * in this case as again opposed to *Hall*."

The case proceeded to a stipulated facts trial, and the trial court found defendant guilty of possession of a controlled sub-stance and entered judgment accordingly. Defendant appeals from that judgment.

■ The facts of this case are analogous to the facts in *Hall*, in which the Supreme Court reversed the defendant's conviction based on the trial court's denial of his motion to suppress. In *Hall*, the officer observed the defendant glance at the officer several times as he passed by in his patrol car. The officer turned his car around, stopped, and motioned for the defendant to come over. The officer then got out of his car and obtained the defendant's identification, performed a war-rant check, and returned the defendant's identification. The officer noticed a bulge in one of the defendant's jacket pockets and asked the defendant if he was carrying weapons or illegal drugs, to which the defendant replied in the negative. The officer then asked the defendant if he could search him, and the defendant consented. During the ensuing search, the offi-cer discovered a small vial containing controlled substances. *Id.* at 10-11.

In concluding that the trial court erred in denying the defendant's motion to suppress, the Supreme Court first held that the officer had stopped the defendant when he took his identification and ran a warrant check and that that stop was unlawful because the officer had no reasonable suspicion to do so. *Id.* at 19. The court then reasoned that, once a defendant shows a "minimal factual nexus" between the unlawful police conduct and the defendant's consent, which the defendant had, the burden falls on the state to show that "the defendant's consent was independent of, or only tenuously related to the unlawful police conduct." *Id.* at 34-35. Because the state had not made any such showing, the Supreme Court reversed the defendant's conviction. *Id.* at 36.

■     As in *Hall*, Officer Hevern unlawfully stopped defendant when he obtained defendant's identification and ran a warrant check without reasonable suspicion that defendant had committed a crime. In addition, the state failed to make the required showing to prove that defendant's subsequent consent was not causally connected to the unlawful stop.[1] Accordingly, we reverse the judgment of the trial court and remand.

Reversed and remanded for new trial.

---

[1] The Supreme Court pointed to two examples in which the state could meet its burden: when a defendant spontaneously consents without any police prompting, and when a defendant is advised of his or her rights before consenting. *Hall*, 339 Or at 34. The state has not proved any similar circumstances. *Id.* at 36; *see also Mastin*, 203 Or App at 373-75 (same).